APPEALS OF ROBERT JEMISON, JR.; ROBERT JEMISON, JR., ET AL., AS TRUSTEES IN LIQUIDATION OF FOREST PARK REALTY CO.; AND W. M. LEARY.

Docket Nos. 2620–2622.   Submitted August 10, 1925.   Decided February 17, 1926.

1. A corporation holding undeveloped real property was dissolved during the pendency of negotiations for the sale of such property and it was transferred to the stockholders of the corporation. Thereafter the stockholders consummated the sale. *Held,* that no profit was realized by the corporation, but that the profit, if any, inured to the stockholders and, dissolution and sale being made at approximately the same time, the basis for gain or loss was the cost of the stock to the taxpayers subtracted from the proceeds of the sale received by them.

2. Two individuals owned all the stock of the above-named corporation. Prior to its dissolution each of them transferred half of his stock to his wife. *Held,* on the evidence, that the transfers were *bona fide* gifts, and that no profit was realized by the wives upon the subsequent dissolution of the corporation and the sale by them of their interest in property received on such dissolution.

3. Basis of gain or loss determined in detail in the above transaction from the evidence.

*Oscar W. Underwood, Jr., William B. White,* and *Shuford B. Smyer, Esqs.,* for the taxpayers.

*M. B. Leming, Esq.,* for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

In the appeal of the Forest Park Realty Co., the deficiency claimed by the Commissioner is $117,958.10 for the year 1919, all arising from an alleged profit of $275,000 claimed to have been made by the company during that year from the sale of real estate.

In the case of W. M. Leary the deficiency alleged by the Commissioner is $21,047.70 as to the year 1919, with an overassessment of $55.75 for the year 1920. The basis of the deficiency consists of an alleged profit of $75,359.75 claimed by the Commissioner to have been received, as in the case of Jemison, as a distribution in liquidation of the Forest Park Realty Co.

The three appeals were heard together, the issues being whether certain transfers of stock by the taxpayers, Jemison and Leary, were *bona fide* gifts to their wives, so that they did not realize a profit to themselves on such stock on the dissolution of the Forest Park Realty Co.; whether the Forest Park Realty Co. or the individuals named realized a profit from the sale of its real estate; and finally, whether the Commissioner correctly measured the profit of W. M. Leary, aside from the claim by him that the profit was reduced by virtue of the above-mentioned transfer of stock to his wife.

### FINDINGS OF FACT.

Robert Jemison, Jr., and William M. Leary are individuals extensively interested in real estate operations in the City of Birmingham, Ala., and during the year in question were specifically interested in the Forest Park Realty Co. which at the beginning of that year was the owner of substantial tracts of valuable unimproved property in what was known as the " country club district " of Birmingham, comprising some of the most desirable undeveloped residence property in the city.

The Forest Park Realty Co. was organized in 1917 and, until its dissolution in 1919, was the actual owner of the real property above

mentioned from its organization to and including the time of the events in 1919 more fully set forth below.

The Forest Park Realty Co. was organized as the result of litigation and other difficulties surrounding the then Avondale Land Co., a corporation theretofore organized and at that time the owner of the real property here in question. J. F. Leary, father of W. M. Leary, in 1917 and prior thereto owned 771¼ shares of the stock of the Avondale Land Co., and the minority stockholders therein owned 728¾ shares of the total stock outstanding. Leary, by his control as majority stockholder, had conducted the affairs of the company in a manner unsatisfactory to the minority stockholders. Robert Jemison, Jr., one of the petitioners, undertook, although not as a stockholder, to negotiate a settlement of the affairs of the Avondale Land Co., in the course of which he sent to the minority stockholders the following letter:

BIRMINGHAM, ALABAMA, *March 28, 1917.*

Mr. MORRIS ADLER AND ASSOCIATES, *City.*

DEAR SIRS: I enclose very brief memorandum outlining tentative proposition for consideration of your associates. I am under the impression that this is a similar proposition in which they were interested some ten years ago when the majority interests declined to consider the suggestion of conveying property to the minority interests.

You will recall that the minority holdings are perhaps worth no more today on the open market than they were ten years ago, nor has any material progress been made by the company during that time, outside of the collection of salaries. The policy of the company during this period has worked a serious hardship on the minority interests, and also on the property which we represent in that vicinity, and which has been and is at present more or less dependent upon the policy of the company controlling property lying between our property and the center of the city. It is only for these reasons that we are interested to the extent of incurring some responsibility and liabilities, as suggested in the plan proposed.

If your people are not interested in this or some similar plan, it will be useless for us to consider the matter further, in which event your company will probably continue to pursue the same policies which will ultimately exhaust the assets of the company, or at least depreciate very materially the value of its property and likewise the value of the stock from which you are not now receiving any returns whatever, nor have you any early prospects of the company getting on an earning basis under the present management, while under the plan proposed you will have tangible revenue, paying assets in return for your stock at a much higher price than it would bring; or else in the case of foreclosure, you would have tangible assets which in my opinion would be more salable at a better price than your present minority holdings of stock.

Obviously, we would eventually expect to merge this and all other companies holding residence property in this vicinity in order that development could be made along co-operative and comprehensive lines. With an active real estate market we are of the opinion that the proposed issue of bonds would be retired within a comparatively short time through release of property incident to active sale of lots, particularly in that part of the property east of the

Mountain Terrace car line between Clairmont Avenue and Mountain Terrace, and also that part of the property which would be opened by an extension of Clairmont Avenue and Glenwood. You will recall that Clairmont Avenue is now paved from Highland Avenue to the asphalt pavement in Mountain Terrace.

　　　　Yours very truly,

　　　　　　　　　　　　　　(Signed)　　　　ROBT. JEMISON Jr.

DATA AND TENTATIVE SUGGESTIONS FOR CONSIDERATION OF MINORITY STOCKHOLDERS.

| | |
|---|---:|
| Capitalization of existing company, 1500 shares at par value | $150,000.00 |
| Minority interests 728¾ shares at par value | 72,875.00 |
| Majority interests 771¼ shares at par value | 77,125.00 |
| Birmingham interests 243¼ shares at par value | 28,575.00 |
| Nashville interests 485½ shares at par value | 48,550.00 |
| Outstanding bonds | 96,000.00 |
| Estimated possible assessment or bond issue for recent paving | 30,000.00 |

Subject to working out of details, it is proposed to organize a new company with paid-in capital of not less than $75,000.00 represented in cash, securities or land that shall be of an appraised value of $75,000.00 or more. It is proposed to acquire the minority interests of 728¾ shares at $200.00 per share or $145,750.00, paying said $145,750.00 in bonds of a first mortgage bond issue of $150,000.00 for a period of 15 years, interest at 5% payable semi-annually, redeemable at any interest period at par. These bonds to be secured by a deed of trust conveying to the Trustee approximately 150 acres of land located as follows:

### Suggestion No. 1.

| | | | |
|---|---|---:|---|
| In SW ¼ of NE ¼ 32–17–2 | approximately | 25 | acres |
| In SE ¼ of SE ¼ 29–17–2 | " | 40 | " |
| In NW ¼ of NE ¼ 32–17–2 | " | 30 | " |
| In W ½ of NE ¼ 30–17–2 | " | 50 | " |
| | " | 145 | " |

### Suggestion No. 2.

| | | | |
|---|---|---:|---|
| In NE ¼ of NE ¼ 32–17–2 | approximately | 40 | acres |
| In NW ¼ of NW ¼ 33–17–2 | " | 40 | " |
| In SW ¼ of SE ¼ 29–17–2 | " | 25 | " |
| In NE ¼ of NE ¼ 30–17–2 | " | 39 | " |
| | " | 144 | " |

The mortgage or bonds being on basis of approximately $1,000.00 per acre, which is considered less than 50% of the conservative value of the land.

The privilege of releasing two or more acres of land at a time from the mortgage on the basis of $2000.00 per acre, or one or more lots of a frontage of 50 ft. on basis of $500.00 per lot, or $10.00 per front foot. In consideration for above releases payable in cash, or balance purchase money mortgages, which mortgages must not represent more than 75% of the selling price of the property, it is proposed that the above issue of bonds shall be used in acquiring minority interests above mentioned.

Bonds or deed of trust, if any, that may be issued for the purpose of acquiring majority interest would be separate and distinct and separate deed of trust on different tracts of land would be issued, entirely eliminating any connection between minority and majority interests, making it possible for the

majority interest to have tangible assets in well secured mortgages or bonds subject to the control of the minority interests and immune from the usual and existing unsatisfactory position of a minority interest in a dormant land company lacking in aggressive and harmonious management.

Your attention is called to the fact that ten years ago the purchase price of 30 acres of land, now known as Mountain Terrace, was $2200.00 per acre without car service, sewers, water, gas and other public utilities and isolated from other residence property. This property is now selling at $40 to $60 per foot, or $7000 to $8000 per acre. The adjoining tract, known as Glenwood, of which 10 of 40 acres have been developed, is selling at prices from $35 to $40 per foot, or $6000 to $7000 per acre.

Your attention is called to the fact that in the event of necessity of foreclosing of mortgage that you will come much nearer realizing $145,750.00 out of your 728¾ shares of stock through the sale of this land than would be possible through a forced sale of 728¾ shares of stock representing a minority interest under existing conditions. As you perhaps realize, the stock would not sell on the open market today at 125.

If the minority interest are favorable to the above proposed plans, further efforts will be made with other interest, otherwise the matter will most likely be dropped.

The map attached indicates the property herein described.

To this proposal Adler replied under date of July 13, 1917, as follows:

BIRMINGHAM, ALA., *July 13, 1917.*

Mr. ROBERT JEMISON, Jr., *Birmingham, Alabama.*

DEAR SIR: Referring to tentative proposition hereto attached under date of March 28, 1917, relative to the exchange of 63 shares of stock in the Avondale Land Company, (which I control and represent), for certain bonds of an issue of $150,000.00 to be secured by a mortgage on approximately 145 acres of unencumbered land now forming a part of the Avondale Land Company and tentatively referred to as suggestion No. 1:

The basis of exchange being $200 of bonds for each $100 of stock, it being further understood that I shall be reimbursed for the amount necessary to pay attorney's fee, not to exceed $3,750.00 due by me to Mr. Cooper, of Huntsville, and payable in bonds of the above proposed issue, it being understood that I shall make the best possible settlement with Mr. Cooper for the fee; and I further agree to make the best possible adjustment with Mr. Cooper for payment of fee on a more liberal basis if paid in cash, having him give the parties paying the fee the option of paying the same either in bonds or in cash, it being understood that I am to be reimbursed only for such amount as is necessary to pay the fee charged by Mr. Cooper.

I hereby agree, as representative of and agent for the undersigned owners of 83 shares of stock of the Avondale Land Company, to accept in payment for this stock, bonds as above provided and as further described in the attached tentative proposition under date of March 28, 1917, and I further agree to deliver this stock on the above conditions at any time within sixty days from this date or until September 12, 1917.

The above option to acquire this stock under the conditions named is given in consideration of your services and efforts to consummate the proposed transaction, it being understood that we are under no obligations to pay you for such services other than the delivery of the 63 shares of stock herein referred to under the conditions named.

On the same date, March 28, 1917, Jemison addressed a further communication to P. G. Shook inclosing the above-mentioned tentative proposal, upon which Shook and his associates acted, as shown by the following letter.

NASHVILLE, TENNESSEE, *April 3, 1917.*

Mr. P. G. SHOOK,
    *Brown Marx Bldg., Birmingham, Ala.*

DEAR SIR: Referring to the tentative proposition submitted by Mr. Robert Jemison, Jr., under date of March 28, 1917, relative to the exchange of our holdings of Avondale Land Company stock amounting to 485½ shares, for certain bonds of an issue of $150,000 to be secured by mortgage on approximately 145 acres of unencumbered land now forming a part of the Avondale Land Company.

  The basis of exchange being $200.00 of bonds for each $100.00 of stock.

We, the undersigned, holders of stock aggregating the above amount are willing, subject to your approval, to make this exchange, provided that the bonds to be issued shall bear interest at the rate of 6% per annum instead of 5%, and that all formalities, as to the issuance of bonds, be approved by you.

On November 17, 1917, the foregoing arrangements were formally carried out at meetings of the board of directors and stockholders of the Avondale Land Co. The board of directors at that meeting adopted a resolution wherein it was provided that there should be conveyed to J. F. Leary some 30 acres of real estate in consideration that he assume all the liabilities of the Avondale Land Co., which consisted principally of indebtedness to himself. It was further provided that there should be conveyed to Shook real property in the amount of approximately 145 acres, as trustee for minority stockholders, and to W. M. Leary or his nominee approximately 155 acres for the majority stockholders. It was further provided that there should be conveyed to Jemison and W. M. Leary approximately 40 acres as a reward for their services in bringing about the arrangement between the majority and minority stockholders, the division of the property of the company and the plan for the organization of the Forest Park Realty Co., more fully set forth below. It was specifically provided in the resolution that all of the land then disposed of by the Avondale Land Co. should be conveyed to the Forest Park Realty Co., the land conveyed to Shook and Leary to be transferred to the Forest Park Realty Co., and they to receive bonds in exchange, the land conveyed to J. F. Leary to be in full payment of all claims against the company, and the land conveyed to W. M. Leary and Jemison to be turned in by them for capital stock. These arrangements were carried out and warranty deeds were given to the various parties. It had been contemplated that J. F. Leary would receive deed to 155 acres and would convey that land to the Forest Park Realty Co. and receive its bonds. Just prior to the

actual acknowledgment and delivery of the deed he transferred his stock to W. M. Leary, the deed was delivered to W. M. Leary, and he participated in the succeeding transactions.

The fair market value of the property of the Avondale Land Co. delivered to W. M. Leary as majority stockholder at the dissolution of that company was $154,250. The fair market value of the real property delivered to P. G. Shook for the minority stockholders in that company was $145,750; and the fair market value of the property delivered to W. M. Leary and Robert Jemison, Jr., in consideration of their services to the company, was $40,000.

Thereafter, under date of November 16, the Forest Park Realty Co. was duly incorporated under the laws of the State of Alabama, with an authorized capital stock of $2,000, of which $1,000 was paid in upon organization. After the formal preliminary proceedings provision was made for an increase in the authorized capital stock to $25,000, and thereupon, at a meeting of the stockholders, a resolution was adopted which provided that $145,750 be issued in bonds secured by certain real estate in exchange for the conveyance of that real estate to the company, and that $154,250 in bonds be issued also in exchange for real estate therein described and transferred to the company. This provided for the conveyance of the minority and majority interests in the Avondale Land Co. as above set forth. The resolution further provided for the transfer of the property received by Jemison and Leary from the Avondale Land Co. in exchange for capital stock of the company. These arrangements were fully carried into effect and the Forest Park Realty Co. acquired the property in question and delivered its bonds and stock in exchange therefor.

So far as material to this proceeding, the result of these transactions was that Leary and Jemison acquired land in 1917 of approximately 40 acres in area and $40,000 in value, which they turned in to the company in exchange for its capital stock in the amount of $24,000 par value, $1,000 par value being issued for cash. As a result of these operations the Forest Park Realty Co. became the owner in fee of all the lands theretofore owned by the Avondale Land Co. W. M. Leary, as majority stockholder, received bonds in exchange for that portion of the lands theretofore set aside as the share of the majority stockholders, the minority stockholders of the Avondale Land Co. receiving bonds in exchange for that portion of the lands theretofore set aside to them, and Leary and Jemison receiving stock for that portion of the lands theretofore delivered to them in consideration of their efforts in bringing about a settlement of the affairs of the Avondale Land Co. It was further

accomplished through this operation that each separate bond issue as above set forth was secured by deed of trust on the particular tract of land theretofore set aside for the majority and minority stockholders, respectively, so that in the event of failure of the company to meet its obligation under these bonds foreclosure proceedings would not thereafter bring the majority and minority stockholders into common ownership of any of such property, but each by foreclosure would really acquire that portion of the property they conveyed to the Forest Park Realty Co. Under this arrangement also Jemison and Leary, through their stock ownership, acquired in equal shares all right to any subsequent profits realized by the company.

Thereafter, and until the month of August, 1919, the Forest Park Realty Co. continued in business and continued as the owner of the land theretofore conveyed to it, as above set forth, with the exception of approximately 60 acres of the said property situated in the industrial section, which was sold and conveyed in a manner not material to this proceeding.

Prior to August 13, 1919, Robert Jemison, Jr., conducted certain negotiations with the president of the Birmingham Realty Co., who lived in New York, and with the general manager of that company, I. C. Beatty, who lived in Birmingham, looking to the sale and transfer of that portion of the property of the Forest Park Realty Co. to the Birmingham Realty Co. which comprised the undeveloped residential property above mentioned. These negotiations resulted in an offer and acceptance passing between Jemison and Beatty in writing, said communications being in full as follows:

BIRMINGHAM, ALA., <i>August 13, 1919.</i>

BIRMINGHAM REALTY COMPANY,
    Mr. I. C. BEATTY, *General Manager, Birmingham, Alabama.*

DEAR SIR: Referring to your proposition of this date to pay $650,000.00 for approximately 292 acres of land owned by the following companies:

| | |
|---|---|
| Forest Park Realty Company | 210 acres |
| Mountain Home Land Company | 52 acres |
| Glenwood Realty Company | 30 acres |

I hereby agree to give you forty-eight (48) hours to obtain a confirmation of this trade from your President, it being understood and agreed however, that the proposition is subject to approval of the stockholders and Boards of Directors of the Forest Park Realty Company, the Glenwood Realty Company and the Mountain Home Land Company.

It is further understood and agreed that options held on land fronting the Mountain Terrace car line on 42nd Street, and on 160 acres of land known as the Smith tract, shall be assigned to your company, and in the event this trade is confirmed and concluded the terms are to be as follows:

The Birmingham Realty Company to assume outstanding bonds of the Forest Park Realty Company, as follows:

| | |
|---|---:|
| Outstanding Bonds | $283,000.00 |
| Less purchase money notes in sinking fund | 75,000.00 |
| Balance | $208,000.00 |
| On the 210 acres of land still owned by that company Cash payment of | 242,000.00 |
| Balance payable in 4 equal annual installments of $50,000.00 each, with interest at 6% payable semi-annually, (notes payable on or before maturity) | 200,000.00 |
| Total | $650,000.00 |

In accordance with our understanding I shall not take this matter up with the Directors of the Land Companies owning the above described property until the above trade has been duly confirmed.

All details regarding pending contracts for utilities, street improvements, sales and building contracts in suspense, to be adjusted between Mr. I. C. Beatty of the Birmingham Realty Company and Robt. Jemison, Jr. of the respective Land Companies owning the above described lands.

The mortgages to secure deferred payments to be made on the separate tracts of land owned by each company, and in accordance with our understanding the relative selling prices of the land owned by the several Land Companies shall be about as follows:

Forest Park Realty Company:

| | |
|---|---:|
| 130 acres at $2500.00 per acre | $325,000 |
| 80 " at 2000.00 " " | 160,000 |
| Total | $485,000 |
| Glenwood Realty Company: | |
| 30 acres at $2500.00 per acre | 75,000 |
| Mountain Home Land Company: | |
| 52 acres at $1730.00 per acre | 90,000 |
| Total | 650,000 |

The above trade to be closed through conveyance of property by deed and mortgage.

Yours very truly,        (Signed)        ROBT. JEMISON, Jr.

BIRMINGHAM, ALA., *August 15, 1919.*

Mr. ROBERT JEMISON, Jr., *City.*

DEAR SIR: Referring to your written proposition of August 13th in regard to the purchase by this Company of approximately 292 acres of land owned by the following companies:

| | | |
|---|---:|---|
| Forest Park Realty Company | 210 | acres |
| Mountain Home Land Company | 52 | " |
| Glenwood Realty Company | 30 | " |

for the sum of $650,000.00, I beg to say that the same is accepted subject only to a possible revision of the terms of payment.

It is understood, of course, that the options referred to in your letter are to be transferred to this Company and all details regarding pending contracts for utilities, street improvements, sales and buildings are to be adjusted between yourself and the undersigned.

It is understood, of course, that this acceptance is also based on your ability to deliver satisfactory titles to the property.

Yours truly,

(Signed)  I. C. BEATTY,
*General Manager*.

When it appeared, as set forth in the foregoing, that the Forest Park Realty Co. and its stockholders, Jemison and Leary, were about to realize very substantial profits from the sale of the property of the company, they cast about for a means of avoiding realization of such profits or such portion of them as they might be advised legally could be avoided, and the avoidance of the resulting taxes which would otherwise have to be paid upon the income derived from these transactions. In so doing they consulted counsel and apparently discussed the matter with laymen and others whom they thought familiar with the various methods which might be resorted to for the purpose they had in view. Among the suggestions made to them were (1) that the Forest Park Realty Co. dissolve before consummating the above sale, and (2) that the stockholders each give their wives one-half of their stock in that company. On August 26, 1919, Jemison and Leary delivered for cancellation those certificates of stock theretofore held by them, in a total amount of 125 shares each, and caused to be issued to them certificates 11 and 13 for 62½ shares each, and to their wives certificates 10 and 12 for the same number of shares. Thereafter, and at some time prior to August 29, a meeting of the stockholders of the company was called, to be held at 5 o'clock p. m., August 29, but when the meeting was called a notation was inserted in the minute book reading as follows:

BIRMINGHAM, ALABAMA, *August 29th, 1919.*

STOCKHOLDERS' MEETING—FOREST PARK REALTY COMPANY.

On account of no quorum, the meeting of the stockholders of the FOREST PARK REALTY COMPANY, called to be held at five o'clock p. m., Friday, August 29th, 1919, was adjourned until five o'clock p. m., Friday, September 5th, 1919.

(Signed)  A. B. TANNER,
*Secretary.*

Thereafter, and on the 19th day of September, 1919, a meeting of the directors of the company was held, the minutes of said meeting being in full as follows:

MINUTES OF A SPECIAL MEETING OF THE BOARD OF DIRECTORS OF FOREST PARK REALTY COMPANY HELD AT THE OFFICE OF JEMISON REAL ESTATE & INSURANCE COMPANY, 211 NORTH 20TH STREET, BIRMINGHAM, ALABAMA, ON THE 19TH DAY OF SEPTEMBER, 1919, AT 12 O'CLOCK M.

Present: Messrs. Robert Jemison, Jr., W. M. Leary, and A. B. Tanner, being all of the directors of the Company qualified to act as such.

The meeting was called to order by the President.

The Secretary presented to the meeting and read a waiver of notice of the meeting signed by all of the Directors of the Company who were present, and on motion duly made and·carried a copy thereof was ordered spread on the minutes of this meeting at the end hereof.

The Secretary also reported that Mr. C. W. Smith no longer owned any stock in the Company and was therefore not qualified to act as a Director, and his stock having been transferred his office was vacant.

On motion duly made and carried Mrs. Virginia W. Jemison, a stockholder of the Company was duly nominated and elected a Director of the Company to fill the vacancy caused by the disqualification of Mr. C. W. Smith, and Mrs. Virginia W. Jemison being present, entered the meeting and took her seat as a director of the Company.

Thereupon Mr. A. B. Tanner presented his resignation as a director and on motion duly made and carried Mrs. Callie S. Leary was duly nominated and elected a director of the Company to fill the vacancy caused by the resignation of Mr. A. B. Tanner.

Mr. A. B. Tanner also tendered his resignation as Vice President of the Company, and on motion duly made and carried Mrs. Callie S. Leary was duly nominated and elected Vice President of the Company to fill the vacancy caused by the resignation of Mr. A. B. Tanner.

The President stated that inasmuch as the corporation had no further plan for the development of its property, in his opinion it was advisable for the corporation to be dissolved. After discussion, on motion duly made and carried it was unanimously resolved that the President of the Company be and he hereby is authorized and directed to take such steps as may be necessary to effect a dissolution of the Company and, upon approval and agreement of the stockholders of the Company to a dissolution of the corporation, the President and Secretary of the Company and the Directors of the Company be, and they hereby are authorized and directed to execute and deliver to the stockholders of the Company a deed or deeds to all of the assets of the Company in consideration of their assumption of all of the liabilities of the Company, conveying such assets to the stockholders in proportion to their holdings of the capital stock of the Company, after first distributing to said stockholders any cash or other liquid assets which may be in the treasury of the Company in proportion to their respective holdings of the capital stock of the Company.

There being no further business before the meeting, on motion duly made and carried the meeting adjourned.

                        (Signed)          ROBERT JEMISON, JR., *Chairman.*
                        (Signed)          WM. M. LEARY, *Secretary.*

On September 20 a meeting of the stockholders was held. The minutes, together with the waiver of notice, are as follows:

MINUTES OF A SPECIAL MEETING OF THE STOCKHOLDERS OF FOREST PARK REALTY COMPANY HELD AT THE OFFICE OF JEMISON REAL ESTATE & INSURANCE COMPANY, 211 NORTH 20TH STREET, BIRMINGHAM, ALABAMA, ON THE 20TH DAY OF SEPTEMBER, AT 2 O'CLOCK P. M.

Present: Messrs. Robert Jemison, Jr., W. M. Leary, Mrs. Virginia W. Jemison and Mrs. Callie S. Leary, being all of the stockholders of the Company.

The meeting was organized by the election of Mr. Robert Jemison as Chairman of the meeting and Mr. W. M. Leary as Secretary of the meeting.

The Secretary presented to the meeting and read a waiver of notice of the meeting signed by all of the stockholders of the Company, a copy of which was

on motion duly made and carried ordered spread upon the minutes of the meeting at the end hereof.

The minutes of a special meeting of the Board of Directors of the Company, held at the office of Jemison Real Estate & Insurance Company, 211 North 20th Street, Birmingham, Alabama, on the 19th day of September, 1919, at 12 o'clock m., were read, and after discussion, on motion duly made and carried, it was unanimously resolved that the Forest Park Realty Company be dissolved.

Thereupon, all of the stockholders being present signed and executed an agreement of dissolution in accordance with the provisions of an Act entitled "An Act to amend Section 3510 of the Code of Alabama approved February 9th, 1915," appearing on page 52 of the General Acts of Alabama of 1915.

There being no further business before the meeting, on motion duly made and carried the meeting adjourned.

(Signed)   ROBT. JEMISON, Jr., *Chairman.*
(Signed)   WM. M. LEARY, *Secretary.*

WAIVER OF NOTICE.

BIRMINGHAM, ALABAMA, *September 20th, 1919.*

The undersigned, being all of the stockholders of Forest Park Realty Company, hereby waive any and all notice of the time, place and purpose of a special meeting of the stockholders of said Company, to be held at the office of Jemison Real Estate & Insurance Company, 211 North 20th Street, Birmingham, Alabama, on the 20th day of September, 1919, at 2 o'clock P. M., and hereby agree and consent to the holding of said meeting and approve, ratify and confirm any action taken thereat of which the above are the minutes.

(Signed)   * ROBERT JEMISON, Jr.
(Signed)   WM. M. LEARY
(Signed)   CALLIE S. LEARY
(Signed)   VIRGINIA W. JEMISON.

Thereupon, under date of September 20, 1919, the Forest Park Realty Co., by Robert Jemison, Jr., president, and Jemison, Leary, and their wives, executed the following agreement of dissolution:

AGREEMENT OF DISSOLUTION OF FOREST PARK REALTY COMPANY.

STATE OF ALABAMA, *Jefferson County.*

AGREEMENT, made this 20th day of September, 1919, by and between Forest Park Realty Company, an Alabama Corporation, which was organized in Jefferson County, Alabama, and W. M. Leary, Callie S. Leary, Robert Jemison, Jr., and Virginia W. Jemison being all of the stockholders of said Forest Park Realty Company, WITNESSETH:

Whereas, all of the stockholders of said Forest Park Realty Company desire to dissolve said corporation, and its business and affairs have been settled up and adjusted;

Now THEREFORE, in consideration of the premises, all of the stockholders of said Forest Park Realty Company do hereby mutually agree that said Forest Park Realty Company be and it hereby is dissolved, and that the Board of Directors of said corporation consisting of W. M. Leary, Callie S. Leary, Robert Jemison, Jr., and Virginia W. Jemison shall proceed to settle up and adjust the business and affairs of said corporation. In witness whereof, *

104881—27——54

said Forest Park Realty Company has caused this instrument to be executed in its corporate name by its president and its corporate seal be hereunto affixed and attested by its Secretary, both hereunto duly authorized, and the stockholders of said corporation have hereunto set their hands and seals at 2:30 p. m. this 20th day of September, 1919.

[CORP. SEAL.]

FOREST PARK REALTY COMPANY,

By ROBERT JEMISON, JR.,  *President*.

ROBERT JEMISON, Jr.          [L. s.]

WM. M. LEARY.          [L. s.]

CALLIE S. LEARY.          [L. s.]

VIRGINIA W. JEMISON.          [L. s.]

Attest:

WM. M. LEARY, *Secretary*.

The foregoing instrument was supported by the certificate of W. M. Leary that Jemison, Leary, Virginia Jemison, and Callie Leary were all the stockholders of record of the corporation. Acknowledgments of Robert Jemison, Jr., as president, and of the four parties were taken before A. B. Tanner, a clerk in the office of Jemison's real estate company.

On September 22 the Forest Park Realty Co. and the four parties above mentioned executed the following instrument:

STATE OF ALABAMA,
    *Jefferson County.*

FOREST PARK REALTY COMPANY TO ROBERT JEMISON, JR., ET AL.

THIS INDENTURE, made this 22nd day of September, 1919, by and between Forest Park Realty Company, an Alabama corporation, and Robert Jemison, Jr., W. M. Leary, Virginia W. Jemison and Callie S. Leary, as Directors and Trustees in dissolution of the Forest Park Realty Company, (hereinafter called Grantors) parties of the first part, and Robert Jemison, Jr., W. M. Leary, Virginia W. Jemison, and Callie S. Leary, all of Birmingham, Alabama, (hereinafter called the Grantees) parties of the second part, WITNESSETH: WHEREAS, the Grantor Forest Park Realty Company, has been duly dissolved and the Grantees are the owners of all of the capital stock of said corporation and as such are the beneficial owners of the property hereinafter described, and are entitled on account of such dissolution to a conveyance of said property:

NOW THEREFORE in consideration of the premises and of the sum of Five Dollars ($5.00) to the Grantor, Forest Park Realty Company, duly paid by the Grantees, the receipt whereof is hereby acknowledged, the Grantors do hereby grant, bargain, sell and convey unto the Grantees the following described property, situate, lying and being in the City of Birmingham, County of Jefferson, State of Alabama, viz:

[Real estate described in detail.]

This conveyance is subject however to existing streets, avenues, alleys and other public ways through said property. This conveyance is also subject to the indebtedness secured by and the lien of that certain deed of trust or Mortgage dated November 24th, 1917, from the Forest Park Realty Company

to the Title Guarantee Loan & Trust Company, as Trustees, to secure an issue of Forest Park Realty Company's Sinking fund Gold Bonds, which deed of Trust or Mortgage is recorded in volume 907, page 83, in the office of the Judge of Probate of Jefferson County, Alabama, and which said indebtedness and lien the grantees hereby assume and agree to pay. This conveyance is also subject to the indebtedness secured by and the lien of that certain deed of Trust or Mortgage dated November 24th, 1917, from the Forest Park Realty Company to the Title Guarantee Loan & Trust Company, as Trustee, to secure an issue of Forest Park Realty Company's Gold Bonds, which Deed of Trust or Mortgage is recorded in volume 907, page 100, in the office of the Judge of Probate of Jefferson County, Alabama, and which said indebtedness and lien the Grantees hereby assume and agree to pay. To HAVE AND TO HOLD unto the Grantees, their respective heirs, executors and administrators and assigns forever. In witness whereof, Forest Park Realty Company has caused this instrument to be executed in its corporate name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, both thereunto duly authorized, and the Directors of said Forest Park Realty Company, as Trustees in dissolution thereof, have hereunto set their hands and seals all on the day and year first above written.

[CORP. SEAL.]            FOREST PARK REALTY COMPANY. [L. S.]

           By ROBT. JEMISON, JR., *President.*

           W. M. LEARY.                  [L. S.]

           ROBT. JEMISON, JR.          [L. S.]

           VIRGINIA W. JEMISON.        [L. S.]

           CALLIE S. LEARY.            [L. S.]

*Directors and Trustees in dissolution of Forest Park Realty Company.*

Attest:

     W. M. LEARY, *Secretary.*

The acknowledgment of Virginia W. Jemison to the foregoing instrument was taken before T. Puffer, a notary public in New York County, State of New York, said acknowledgment being dated September 22, 1919.

Under date of September 22, 1919, Leary, Jemison, Callie S. Leary, and Virginia W. Jemison executed the following instrument:

STATE OF ALABAMA,
     *Jefferson County.*

         W. M. LEARY, ET AL., TO BIRMINGHAM REALTY COMPANY.

This indenture, made this 22nd day of September, 1919, by and between W. M. Leary, Robert Jemison, Jr., Callie S. Leary and Virginia W. Jemison all of Birmingham, Alabama, (hereinafter called the Grantors) parties of the first part, and Birmingham Realty Company, an Alabama corporation, (hereinafter called the Grantee) party of the second part, WITNESSETH: That for and in consideration of the sum of Eighty Five Thousand Dollars ($85,000.00) lawful money of the United States, in hand paid to the Grantors by the Grantee, the receipt whereof is hereby acknowledged, and the execution and delivery by the Grantee, to the Grantors of purchase money mortgage notes for Two Hundred Thousand Dollars ($200,000.00) and a purchase money mortgage to secure said notes covering the property hereby conveyed and of the assumption by the grantee of the indebtedness and deeds of

trust securing the same hereinafter mentioned, the Grantors do hereby grant, bargain, sell and convey unto the Grantee, its successors and assigns, the following described real estate, situated, lying and being in the City of Birmingham, County of Jefferson, State of Alabama, viz:

[Real estate described in detail.]

This conveyance is subject however to existing street, avenues, alleys and other public ways through said property. This conveyance is also subject to the indebtedness secured by and the lien of that certain deed of trust or mortgage dated November 24th, 1917, from the Forest Park Realty Company to the Title Guarantee Loan & Trust Company as Trustee to secure an issue of Forest Park Realty Company's Sinking Fund Gold Bonds, which deed of trust or mortgage is recorded in Volume 907, page 83, in the office of the Judge of Probate of Jefferson County, Alabama, and which said indebtedness and lien the Grantee hereby assumes and agrees to pay. This conveyance is also subject to the indebtedness secured by and the lien of that certain deed of trust or mortgage dated November 24, 1917, from the Forest Park Realty Company to the Title Guarantee Loan & Trust Company, as Trustee, to secure an issue of Forest Park Realty Company's Gold Bonds, which deed of trust or mortgage is recorded in volume 907, page 100, in the office of the Judge of Probate of Jefferson County, Alabama, and which said indebtedness and the lien the Grantee hereby assumes and agrees to pay. To HAVE AND TO HOLD unto the Grantee, its successors and assigns forever. The Grantors severally to the extent of one-fourth each for themselves and for their respective heirs, executors and administrators, to the same extent as to each of the grantors, covenants with the Grantee, its successors and assigns that they, the said Grantors are lawfully seized of said real property that the same is free from all encumbrances, except liens of the aforesaid mortgages from the Forest Park Realty Company to the Title Guarantee Loan & Trust Company, as Trustee, and taxes for the current year 1919; that they, the said Grantors, have a good right to sell and convey the same as aforesaid; that they will severally, to the extent of one-fourth each, and the respective heirs, executors and administrators of each of them, to the extent of one-fourth as to each of the Grantors shall warrant and defend the same to the said Grantee, its successors and assigns, forever, against the lawful claims of all persons. IN WITNESS WHEREOF the grantors have hereunto set their hands and seals on the day and year first above written.

(I. R. $285.00)

| | |
|---|---|
| W. M. LEARY. | [L. S.] |
| ROBT. JEMISON, JR. | [L. S.] |
| CALLIE S. LEARY. | [L. S.] |
| VIRGINIA W. JEMISON. | [L. S.] |

The signature of Virginia W. Jemison to this instrument was also acknowledged before T. Puffer, notary public, State and County of New York, on September 22, 1919.

Under date of September 22, 1919, deeds from the Forest Park Realty Co. to Jemison, Leary, Virginia W. Jemison, and Callie S. Leary were executed, of which the following is, except as to the party grantee and the description of the real property therein contained, substantially identical with the others:

STATE OF ALABAMA,
　　　*Jefferson County.*

FOREST PARK REALTY COMPANY TO ROBERT JEMISON JR.

THIS INDENTURE made this 22 day of September, 1919, by and between Forest Park Realty Company an Alabama corporation and Robert Jemison Jr., W. M. Leary, Virginia W. Jemison and Callie S. Leary as Directors and Trustees in dissolution of the Forest Park Realty Company, (hereinafter called the grantors) parties of the first part and Robert Jemison Jr., of Birmingham, Alabama, (hereinafter called the Grantee) party of the second part: WITNESSETH Whereas, the Grantor Forest Park Realty Company has been duly dissolved and the Grantee as the owner of certain of the capital stock of said corporation is the beneficial owner of the property hereinafter described, and as such beneficial owner is entitled on account of such dissolution to a conveyance of the property hereinafter described; Now therefore in consideration of the premises and of the sum of Five Dollars ($5.00) to the Grantor. Forest Park Realty Company, duly paid by the Grantee, the receipt whereof is hereby acknowledged, the Grantors do hereby grant, bargain, sell and convey unto the Grantee the following described property, situate, lying and being in the City of Birmingham, County of Jefferson, State of Alabama, to-wit:

[Real estate described in detail.]

To HAVE AND TO HOLD unto the Grantee, his heirs, executors, administrators and assigns forever. In witness whereof Forest Park Realty Company has caused this instrument to be executed in its corporate name by its President and its corporate seal to be hereunto affixed and attested by its secretary, both thereunto duly authorized, and the Directors of said Forest Park Realty Company as Trustees in dissolution thereof, have hereunto set their hands and seals, all on the day and year first above written.

　　　　　　　　　　　FOREST PARK REALTY COMPANY. [L. S.]
　　　　　　　By ROBERT JEMISON Jr., *Its President.*
　　　　　　　　　ROBERT JEMISON Jr.　　　　　[L. S.]
　　　　　　　　　WM. M. LEARY.　　　　　　　[L. S.]
　　　　　　　　　CALLIE S. LEARY.　　　　　　[L. S.]
　　　　　　　　　VIRGINIA W. JEMISON.　　　　[L. S.]
　　*Directors and Trustees in dissolution of Forest Park Realty Company.*
Attest:
　　　WM. M. LEARY, *Secretary.*

STATE OF ALABAMA,
　　　*Jefferson County.*

WHEREAS FOREST PARK REALTY COMPANY executed a deed of trust to the Title Guarantee Loan & Trust Company, a body corporate, as trustee to secure a bond issue, the property hereinafter described being embraced in and covered by said deed of trust which deed of trust is recorded in vol. 907, page 100 of the records in the probate office of Jefferson County, Alabama, and Whereas in Article four (4) of said deed of trust it is provided (a) " If the company sells any of the lands herein described, the company may require the trustee to release the land sold from the lien of this indenture by making payment to the Trustee on the basis of Two Thousand Dollars per acre, for the land to be released or on the basis of Ten Dollars per front foot or Five Hundred Dollars per lot for the land to be released, it being intended that if land is released

on the front foot or lot basis, that these releases are to be substantially on the acreage basis that is on the basis of four lots to the acre of a depth to the front foot released on the basis of four lots to the acre or approximately that area " and WHEREAS, the said Forest Park Realty Company has paid or caused to be paid to the Title Guarantee Loan & Trust Company, in its capacity, as trustee, the sum of Eleven Thousand ($11,000) Dollars, receipt of which is here acknowledged, and has directed the release of four tracts of land, under and in accordance with the provisions of said deed of trust as hereinbefore set forth, the release of one of said tracts to be executed to Callie S. Leary, and the release of one of said tracts to be executed to William M. Leary, and the release of one of said tracts to be executed to Virginia W. Jemison and the release of one of said tracts to be executed to Robert Jemison Jr., to whom respectively the company has conveyed, or is to convey said respective tracts, the four tracts so to be released lying east of the eastern line of 39th Street, as shown and designated in the map and survey of the Avondale Land Company, recorded Map Book 1, page 221, of the records in the Probate office of Jefferson County, Alabama, all of said tract being in the northeast quarter of northeast quarter of section thirty, Township seventeen (17) Range Two west, in said county and state, and the release of said several tracts being on the basis of Ten Dollars per front foot for the land released.

Now in consideration of the premises and in consideration of the payment of said sum to said Title Guarantee Loan & Trust Company, in its capacity as trustee under said deed of trust, and by virtue of the power vested in it by said deed of trust, said company does by these presents, release and discharge from the lien of said deed of trust the real property hereinafter described, the same being one of the tracts hereinbefore referred to and quit claims to the said Robert Jemison, Jr., one of the said tracts of land herein referred to and described as follows, being situated in the City of Birmingham, Jefferson County, Alabama, to-wit:

[Real estate described in detail]

To HAVE AND TO HOLD the property herein and hereby released unto the said Robert Jemison Jr. his heirs and assigns freed and discharged from the lien of said deed of trust. In witness whereof, the said Title Guarantee Loan & Trust Company in its capacity, as trustee as aforesaid, hereunto sets its signature and affixes its seal, this 29th day of September, 1919.

[CORP. SEAL.]        TITLE GUARANTEE LOAN & TRUST COMPANY, *Trustee.*
By E. J. SMYER, *President.*

In all of the foregoing, there appears the following acknowledgment:

STATE OF ALABAMA,
      *Jefferson County.*

I, A. B. Tanner, a Notary Public in and for said county in said state hereby certify that Robert Jemison Jr., Virginia W. Jemison, W. M. Leary, and Callie S. Leary, whose names as Directors and Trustees in dissolution of the Forest Park Realty Company are signed to the foregoing conveyance and who are known to me, acknowledged before me on this day that being informed of the contents of the conveyance they executed the same as such Directors and Trustees in dissolution of the Forest Park Realty Company

voluntarily on the day the same bears date for and as the act of said corporation.

Given under my hand and seal of office this the 22 day of September, 1919.

           A. B. TANNER, *Notary Public.*

Under date of September 24, 1919, the Birmingham Realty Co. and the above-mentioned four persons, that is, Jemison, Leary, and their wives, entered into the following contract:

STATE OF ALABAMA,
   *Jefferson County.*

AGREEMENT, Made this 24th day of September, 1919, by and between BIRMINGHAM REALTY COMPANY, an Alabama corporation, (herein called the Purchaser), party of the first part, and W. M. LEARY, ROBERT JEMISON, JR., CALLIE S. LEARY and VIRGINIA W. JEMISON, all of Birmingham, Alabama, (herein called the Vendors), parties of the second part:

WITNESSETH:

WHEREAS, simultaneously with the execution and delivery of this agreement the Vendors have executed and delivered to the Purchaser a deed to approximately two hundred and ten (210) acres of real estate in the City of Birmingham, Jefferson County, Alabama, and the agreements of the Purchaser herein contained are part consideration therefor;

NOW THEREFORE, in consideration of the premises and of the mutual promises of the parties herein contained, it is agreed as follows:

FIRST: The Vendors have assumed contracts to sell the following lots as platted on map referred to in Article Second hereof, and for the consideration set out opposite the description of each lot, viz:

| Block No. | Lot No. | Consideration |
|---|---|---|
| 16 | 27 | $3,000.00 |
| 16 | 26 | 3,000.00 |
| 16 | 25 | 4,000.00 |
| 16 | 23 | 5,000.00 |
| 16 | 22 | 3,150.00 |
| 16 | 21 | 3,150.00 |
| 17 | 3 | 3,890.00 |
| 17 | 8 | 4,500.00 |
| 19 | 13 | 3,000.00 |
| 19 | 1 | 3,150.00 |

Vendors have also under process of construction, three houses on the property covered by said map, lots upon which said houses are being constructed to be taken at the values set out opposite their description for the purpose of this contract as follows:

| Block No. | Lot No. | Values |
|---|---|---|
| 16 | 32 | $4,000.00 |
| 16 | 30 | 4,000.00 |
| 17 | 4 | 3,890.00 |

The above described lots are included in the property covered by the deed from the Vendors to the Purchaser herein above mentioned. Pur-

chaser agrees to deed back to Vendors or to such persons or corporation as they may designate, all of said lots by warranty deed free and clear of any and all incumbrances, within ten days of request therefor by the Vendors or any of them, and in consideration thereof the Vendors agree to pay to the Purchaser, eighty per cent of the consideration above recited and of the values above recited as to said lots upon which houses are being constructed. In the contracts covering the sale of said lots, the Vendors and their predecessors in title are required to carry out certain obligations with reference to grading, paving, etc., in accordance with the provisions of the sale contracts which have been exhibited to the Purchaser before the execution and delivery of this agreement. The Purchaser agrees to fully perform and carry out for and in behalf of Vendors, all the details and provisions of any such sale contracts in any wise obligating the Vendors or their predecessors in title with reference to streets, avenues, alleys, lots, maps and improvements (other than the construction of houses), installation of utilities, etc.

SECOND: The Purchaser agrees to file for record in conjunction with the other owners of the property whose signatures to said map are or may be required by law, the map of a portion of the property so deeded to the Purchaser from which the sales under said sales contracts have been made, shown on said map as including Blocks 16, 17, 18, 19 and X, bounded on the West by Cliff Road or 42nd Street, on the South by Eleventh Avenue, on the East by Essex Road and on the North by Clairmont Avenue, the property fronting on which is left unplatted on said map.

THIRD: The Purchaser agrees to dedicate the road now graded as an extension eastward of Cliff Road to the point of intersection with Clairmont Avenue extended.

FOURTH: The Vendors have assumed the performance of contract with H. N. Bowdry, covering grading and improvements for Glenwood Avenue from 42nd Street to Essex Road, a true copy of which is hereto attached marked Exhibit 1; contracts with Lee C. Bradley, as Receiver of the Birmingham Railway, Light & Power Company for gas and electric service, true copies of which are hereto attached marked Exhibit 2 and Exhibit 3; and contract with Birmingham Water Works Company for water and water service, true copy of which is hereto attached marked Exhibit 4. The purchaser agrees to assume the performance of and to perform said contracts, Exhibits 1, 2, 3, and 4, and to indemnify and hold harmless the Vendors against any breach or non-performance thereof by the Purchaser, the Vendors on their part assigning said contracts to the Purchaser.

FIFTH: The Purchaser agrees to pave said Glenwood Avenue from 42nd Street to Essex Road and to let contract therefor at once to H. N. Bowdry, paving to be with asphaltic concrete on a five inch concrete base, and according to City of Birmingham specifications and under supervision of an inspector to be furnished by the Engineer of said City and paid by the Purchaser. The Purchaser further agrees to let contract at once to H. N. Bowdry for grading, sidewalks, curb and gutters, storm and sanitary sewers, sloping of terraces, paving with asphaltic concrete on five inch concrete base, subject to supervision of the City Engineer, at prices now fixed by said H. N. Bowdry for 10th Avenue from 42nd Street to Essex Road, 43rd Place, 43rd Street and Essex Road from Cliff Road to Clairmont Avenue.

SIXTH: Under the aforesaid contracts and for engineering, the Vendors or their predecessors in title have expended nine thousand four hundred eighty-five dollars and twenty-eight cents ($9,485.28), to the date hereof. The Purchaser agrees to pay said sum forthwith to or upon the order of the Vendors.

SEVENTH: The purchaser agrees to fill in and grade to the extent necessary to bring flush with the sidewalk line all depressions in lots subject of the above described sales contracts, as far as surplus dirt is available from 10th Avenue grading.

EIGHTH: The Vendors agree to acquire and convey, or cause to be acquired or conveyed to the Purchaser, Lot 18 in Block 46, Avondale Land Company's survey as recorded in the office of the Judge of Probate of Jefferson County, Alabama, in Map Book 1, page 221, on or before six months from the date hereof, subject to unforeseen legal delays. Pending the conveyance thereof to the Purchaser, the Purchaser may withhold from the payment of the purchase money notes due September 24th, 1920, the sum of $5,000.00 to be withheld $1,250.00 from the principal of each of said notes and in the event such conveyance is not delivered to the Purchaser within six months from the date hereof, or within ten days of final decree or judgment with respect to the sale by Court of said lot, should unforeseen legal delays prevent the Vendors from complying with this agreement within such six months, the Purchaser shall hold said sum of $5,000.00 as satisfaction of and liquidated damages for failure of the Vendors to so make or cause to be made such conveyance.

IN WITNESS WHEREOF, the Birmingham Realty Company has caused this instrument to be executed in its corporate name, by its General Manager and its corporate seal to be hereunto affixed and attested by its Assistant Secretary, both thereunto duly authorized, and the Vendors have hereunto set their hands and seals all in duplicate, the day and the year first above written.

BIRMINGHAM REALTY COMPANY,

By I. C. BEATTY, *General Manager.*   [L. S.]

W. M. LEARY.   [L. S.]

ROBERT JEMISON, Jr.   [L. S.]

CALLIE S. LEARY.   [L. S.]

VIRGINIA W. JEMISON.   [L. S.]

Attest:

L. M. MERIWETHER, *Assistant Secretary.*

In accordance with the foregoing Robert Jemison, Jr., W. M. Leary, Virginia W. Jemison, and Callie S. Leary each received, on or about September 24, 1919, $21,501.31 in cash and $50,000 in notes of the Birmingham Realty Co., of a fair market value of $50,000.

In connection with the above contract the four parties above named each received a fourth part of real property of a value of $22,000, and a fourth part of cash reimbursements from the Birmingham Realty Co. of $9,485.28, and cash on account of sales theretofore made by the Forest Park Realty Co. of $9,546. The four parties also participated in the purchase of a lot delivered to the Birmingham Realty Co. at a cost of $1,800 to them, making net receipts in respect of minor adjustments in the contract of $17,231.28.

On the foregoing transactions the Commissioner computed a profit to the Forest Park Realty Co. of $275,000 and determined the deficiency in question. He construed the transaction as one involving income on receipt of proceeds of dissolution of that company to Jemison and Leary alone, in equal shares, and on that distribution computed a gain of $75,359.75 as to Jemison and $75,359.75 as to Leary, and determined the deficiencies hereinabove set forth.

DECISION.

The deficiencies should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

OPINION.

JAMES: The questions presented in these appeals are as follows: (1) The basis of cost upon which to compute the profit to W. M. Leary derived either, as he claims, through the sale of property in 1919, or, as the Commissioner claims, through the dissolution of the Forest Park Realty Co.; (2) the same basis as to Robert Jemison, Jr.; (3) whether or not the Forest Park Realty Co. realized a gain from the sale of the property which it owned prior to its dissolution in 1919, and, if a gain was realized, the measure of that gain; and (4) whether the alleged gifts of stock by Robert Jemison, Jr., and W. M. Leary to their respective wives just prior to the dissolution of the Forest Park Realty Co. operated to reduce the profits realized by each of them, either from the sale of property or from the dissolution of the corporation.

Taking up these points in order, it is the claim of W. M. Leary that the property received by him from the Avondale Land Co. and turned in to the Forest Park Realty Co. was of the reasonable value of $2,000 or more per acre, and that on the dissolution of that company he could not have realized a profit, since his total investment on the basis of the alleged value paid in was approximately $350,000, whereas he and his wife received from the Birmingham Realty Co. $21,501.31 each and notes in the amount of $50,000 each. The record does not disclose what bonds of the company theretofore issued were liquidated to him prior to the above-mentioned transaction, or whether he received the entire amount of $155,000 par value theretofore issued to him. If his claim is correct as to value of land turned in and is otherwise unassailable as a matter of law, this is immaterial, since it is apparent that, even if the gift to his wife is held to be invalid, the total amount received is less than the value of the property turned in for bonds and stock to the Forest Park Realty Co.

Reviewing, therefore, the circumstances under which Leary acquired the bonds and stock above mentioned, it appears that for many years prior to the fall of 1917 Leary's father was the owner of a majority of the stock of the Avondale Land Co., and managed the affairs of that company to the dissatisfaction of all the other stockholders. The property of the company was valuable and was so situated as to make possible its profitable development as residential property in Birmingham. That development was not likely under the conditions surrounding the management of the Avondale

Land Co. Under these circumstances Jemison conceived the idea of eliminating the majority stockholder, J. F. Leary, and the minority stockholders in such a manner as to secure to them the return of at least the value then realizable, while at the same time making it possible for him and W. M. Leary to develop the property and make a profit for themselves. Jemison negotiated with the minority stockholders; W. M. Leary dealt with his father. They persuaded the stockholders to part with their stock in exchange for bonds of a company to be organized, secured in each case by specific mortgage upon specific property to be deeded to the new corporation by each of the interests involved as an equitable division between them. In consideration of bringing about this arrangement Jemison and Leary received a substantial amount of land, some 40 acres, as a reward for their services, and they turned that in to the new company for its stock, thereby assuring either, in case of dissolution by foreclosure, an automatic separation of the majority and minority interests in the old company, or, in the event of profitable operation, the centering of all the profits in themselves. By this arrangement majority and minority stockholders consented to step out of the company and to take, as nearly as could be, a liquidation of their respective interests on the basis of $200 per share in the Avondale Land Co. These parties were capable business men of Nashville and Birmingham, obviously looking out for their own interests, and unquestionably endeavoring to secure from their property all that they thought was possible. Considerable evidence was introduced by the taxpayer as to the values of property in Birmingham in 1917, in order to place a value of $2,000 or more per acre upon the property of the Avondale Land Co. But we can not ignore the fact that the property consisted of a large tract of undeveloped real estate, requiring much intensive work to market, and marketable only over a considerable period of time. Nor can we ignore the fact that this was a wholesale transaction, and that it clearly appears in the evidence not only that the parties were assured by Jemison at the time that their stock was worth not more than $125 per share, but also that real estate was much more active in the years 1918, 1919, and 1920 in this portion of Birmingham than it had ever been before. Upon all the evidence, we feel justified in finding no greater value turned in to the Forest Park Realty Co. than the value placed upon it by the parties at the time, except as to the property turned in by Jemison and Leary for stock, upon which we find a value of $1,000 per acre, corresponding to the value attached to the property turned in for bonds.

Leary further contends that his cost is to be computed, for the purpose of measuring the profit derived from the sale to the Bir-

mingham Realty Co., not only by the property turned in for stock but also by the property turned in for bonds. But this is covered by the findings as to value set forth above. It is important, however, to point out that Leary turned in specific property for his bonds, and in an entirely distinct and separate transaction turned in certain other specific property for stock. Each was a separate transaction, and the profit or loss on the subsequent disposition of the bonds or stock is to be measured by the proceeds of each independently of the other. Indeed, if the Board were called upon to determine the gain or loss derived from the entire transaction under Leary's theory and found a value of the land in excess of $1,000 per acre, it would be impossible to do other than affirm the Commissioner, since there is no evidence in the record as to Leary's realization on the bonds, or whether he was still the owner of them at the time of the dissolution of the Forest Park Realty Co.

We conclude, therefore, that the basis as to Leary upon which profit is to be computed upon the sale of property on the dissolution of Forest Park Realty Co. is $20,500, divided into two parts amounting to $10,250 each.

As to Jemison, it is apparent from the foregoing that he, like Leary, was in receipt of $20,000 of income in the form of real estate paid for services in 1917, and this $20,000, plus $500 paid in in cash, forms the basis from which to compute the profit on the transaction, occurring in 1919, divisible also into two equal parts.

We now come to consider whether the Forest Park Realty Co. realized a gain from the transaction occurring in 1919. The facts are, briefly, that Jemison negotiated the sale to the Birmingham Realty Co. of the major portion of the property of the Forest Park Realty Co. for a consideration of $485,000. As a basis of computing profit on this sale the Commissioner has used $210,000, or, in other words, $1,000 per acre, which for all practical purposes is a satisfactory basis under the circumstances, and has alleged a profit of $275,000 derived from the sale, subject, of course, to deductions for costs of carrying out the operation, as to which values and costs there now appears to be no substantial dispute.

It appears that when Jemison had concluded his negotiations with Beatty upon all the substantial points involved in the transaction it became clear to both Jemison and Leary, but more particularly to Leary, that the tax would be very substantial if the transaction were carried through by the corporation, that there would be little or no further use for the Forest Park Realty Co., and that more taxes would attach to the individuals on the liquidation of that company whenever that might take place. Under these circumstances Leary consulted an Atlanta attorney, a friend of

his, who apparently advised him as to the methods to be pursued to avoid the tax, these methods consisting (1) in giving his wife a portion of his stock in the Forest Park Realty Co., and (2) in dissolving that corporation and distributing its assets in kind prior to the consummation of the sale. Both these steps were taken. Leary gave his wife half his stock; Jemison did likewise, and the Forest Park Realty Co. was dissolved almost simultaneously with the ultimate carrying out of the sale.

The facts are that on September 19, 1919, the directors of the Forest Park Realty Co. determined upon a dissolution, and upon the 20th the stockholders ratified that determination and filed a certificate of dissolution. On September 22 the trustees in dissolution, Jemison, Leary, and their wives caused deeds to be drawn, bearing that date, from themselves as trustees in dissolution to themselves as stockholders, first of the property included in the Birmingham sale and second of the balance of the property then owned by the Forest Park Realty Co. Under date of September 22 a deed was also drawn running to the Birmingham Realty Co., also acknowledged by Virginia W. Jemison in New York and by the other parties in Birmingham. This deed was delivered on the 24th, and on that day the individuals holding the land, Leary and his wife separately, and Jemison for himself and his wife, received the amounts set forth in our findings of fact. The Forest Park Realty Co. at that time was nonexistent, except for the purpose of winding up its affairs, and it had at that time disposed of its assets. This was not only the form but the substance of the transaction. To say that the Forest Park Realty Co. derived a gain from the transaction above set forth is to say that it can be compelled to remain in existence for the purpose of registering a profit on the sale of its property and paying taxes thereon. But no taxpayer, individual or corporate, can be compelled to make profits. Taxes attach to profits which are actually made, and not to profits which might be made. The dissolution of the Forest Park Realty Co. was not a subterfuge; it was a fact, and after its dissolution the corporation, by the very nature of things, could not make profits out of property to which it had theretofore parted with title and possession. The Commissioner contends that its dissolution really effected a distribution of the proceeds of the sale of its property rather than of its property. The fact is otherwise. The corporation had disposed of its property and dissolved. It did not sell its property, receive and distribute the proceeds, and dissolve. The fact that by the procedure taken the corporation avoided a tax is not sufficient reason, in the absence of proof of fraud, to hold the

transaction other than what it actually was. In this connection it is interesting to note that the Commissioner, after first asserting fraud penalties upon the individuals, withdrew those penalties, but never asserted a fraud penalty, so far as our record shows, against the corporation. These transactions were either fraudulent or they were what the taxpayers claim them to have been. The parties either accomplished what they set out to accomplish, namely, the registering of the profit in the names and on the part of the individuals, or they failed to do so. If they succeeded they owe a tax upon the transaction as individuals, and if they knowingly and willfully failed to report that profit as taxable gain they were guilty of fraud. If the corporation made the profit and its officers willfully and knowingly failed to return that profit they and the corporation were guilty of fraud. If the tax was successfully avoided there was neither a fraud nor a tax. The two are inseparable. If the device succeeded it avoided the tax; if it failed the transaction was fraudulent; and there is no concealment on the part of the parties that they intended to do exactly what they did. If what they did was unlawful they were guilty of fraud, whether or not they specifically intended to violate the law. *Horning* v. *District of Columbia*, 254 U. S. 135.

Whether the corporation was in receipt of taxable income after eliminating the above item of $275,000 is somewhat doubtful, since there must also be eliminated under the rule as herein laid down some deductions which the Commissioner allowed in connection with measuring the profit to the corporation, particularly the cost of making the sale, and some taxes and other obligations which were assumed by the sellers in connection with the transfer to the Birmingham Realty Co. Inasmuch as these deductions allowed by the Commissioner are properly allowable to the individuals who made the sale to the Birmingham Realty Co., they form no part of the corporate deductions for the year, and the correct computation of the tax of the corporation is left to be settled under Rule 50 by proper adjustment between the Commissioner and the taxpayer.

Next to be considered is the basis for the computation of gain or loss to Jemison and Leary, and for that purpose we will first consider the basis to be adopted in the event that all of the profit is to be imputed to them. They received from the dissolution of the Forest Park Realty Co. real property a portion of which was thereafter sold to the Birmingham Realty Co. and a portion of which they retained. There is nothing in the record to show exactly the basis of value of this retained property. It appears to have been omitted by the Commissioner in all of his computations.

From the deed transferring this property, set forth in full in our findings, we find the following facts: (1) That the Forest Park

Realty Co., to secure the release of the tracts transferred to Jemison, Leary, and their wives, paid $11,000 from the proceeds of sale allocated to the retirement of bonds for the purpose of securing that release, and that that $11,000 was by the agreement with the trust company substantially 50 per cent of the value of the property so released. On that basis the property delivered to the four individuals in liquidation was of the value of approximately $22,000, or $5,500 each. By the agreement between the parties and the Birmingham Realty Co. it further appears that 20 per cent of certain amounts set forth in that agreement, aggregating as to such 20 per cent $9,546, was to be retained from the selling prices of the lots there set forth by the vendor parties, and also that $9,485.28 was required to be paid to the vendors on account of expenditures theretofore made by the Forest Park Realty Co., making a total of $19,031.28 apparently received by them in excess of the amounts paid directly to them by the Birmingham Realty Co. Offsetting this total of $19,031.28 there was paid approximately $1,800 to acquire a lot required by the Birmingham Realty Co. to enable it to replat the property and provided for in article 8 of the contract above referred to. This represents a total net amount of $17,231.28 received by the four individuals in connection with the transfer and not shown on the record to have been in the actual consideration paid for the property sold. It is of record that Jemison and Leary and their wives received $71,501.31 each, or $143,002.62, in respect to each interest in actual cash from the Birmingham Realty Co., plus real property of a value of $22,000, divided into four parts. It appears, therefore, that the four individuals received between them $286,005.24, plus $17,231.28, plus $22,000, or a total of $325,236.52, out of which they may have deducted some " out-of-pocket " disbursements for attorneys, etc., in connection with the sale, which the Commissioner, by treating the transaction as one made by the Forest Park Realty Co., has allowed as deductions to that company. Upon the record we find that the net amount received by the individuals for the purpose of measuring the gain derived from the transaction was, as to all four individuals, not less than $308,005.24, and not more than $325,236.52, the latter figure to be adjusted as to any amounts heretofore allowed by the Commissioner in connection with the determination of the income of the Forest Park Realty Co. and transferred to the individuals under this decision. In the event, also, that any portion of the above amount of $17,231.28 was in fact not received by the individuals, adjustment therefor should be made in the decision under Rule 50 herein. In the absence of such adjustment the total basis for the computation of gain shall be $325,236.52, minus $41,000, divided as hereinafter set forth.

The next and last question is whether the above amounts received by the Jemison and Leary interests are divisible into four parts or into two; that is, whether there shall be attributed to Jemison and to Leary each one-half of the amount above set forth, or whether there shall be attributed to each of them only one-fourth thereof. In other words, the question is whether the gifts of 62½ shares of stock by each of the parties to their respective wives on August 26 were valid and operated to defeat a taxable profit as to one-half of the amounts above set forth.

The Commissioner appears not to have questioned the fact of the gift or that the wives have since retained the proceeds of the sale above outlined. He says, however, that the gift was in substance a gift of the proceeds of the sale, and not a gift of the stock. This contention overlooks two facts; first, that at the time of the gift there had been no sale, and second, that the thing given was stock and the thing sold was real estate. The wives received the stock on August 26. On September 22 they exchanged that stock for real estate, and on that day they sold the greater part of the real estate. Certainly, if title to the stock passed on August 26, there can be no question that it was the wives who received and sold a portion of the interest in the real property. Here again the transaction was either fraudulent or it was real. If it was a fiction and a subterfuge, and if the wives were not the recipients of the gifts alleged, the returns of Jemison and Leary were false and fraudulent, and the penalty as well as the tax should be imposed upon them. If the gifts were real and valid, and were made at the time and in the manner the parties claim they were, then the stock from that time on was the property of the wives, and the subsequent transactions were the transactions of the wives and not of the husbands.

We may well look with suspicion upon transactions of this kind, and hold, as we have held, that where the circumstances at the time and subsequent transactions indicate that the gift or sale between husband and wife was a mere subterfuge to avoid a tax, the transaction is invalid. *Appeal of P. B. Foulke*, 2 B. T. A. 219. But we can not disregard the separate legal existence of husband and wife as individuals, or their separate rights to hold property and to make separate income-tax returns under both the general law and the Revenue Acts. So long as avoidance is permitted in this matter we can not hold that the mere resort to it is a fraud, nor can we reverse the chronology of the transaction itself and hold, as the Commissioner contends, that a gift of stock is a gift of the proceeds of the sale of real estate owned by the company, the stock in which was the subject matter of the gift.

Inasmuch as the value of the stock of the Forest Park Realty Co. on August 26 was reflected substantially by the existing offer to purchase its property for $485,000, and upon the dissolution of the corporation its assets were distributed in kind, we are unable to find as a fact that the 62½ shares given to the wives on that date had a value substantially different from one-fourth of the $325,236.52 above set forth. Hence we are unable to find as to those shares that any taxable profit exists.

It follows from the above that Jemison and Leary each realized a gain in 1919 from the foregoing transactions of the difference between one-fourth of $325,236.52, the cash and other valuable assets received by them as a result of the dissolution of the Forest Park Realty Co. and the sale of its property, and one-fourth of $41,000, the value of the property turned in to that company for stock. Their tax, therefore, should be computed upon this basis, including in the net income of each at least one-fourth of $308,005.24 and not exceeding $325,236.52, as above set forth. In the absence of agreement between the parties the tax will be computed on a gain of $71,059.13 each, as to Jemison and Leary.